**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martha Torres, | No. CV-22-00841-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| QuikTrip Corporation, et al., | |
| Defendants. | |

Before the Court is a discovery dispute concerning Martha Torres' ("Plaintiff") Rule 30(b)(6) Notice of Deposition to QuickTrip Corporation ("Defendant"). (Doc. 45). The parties have filed a Joint Supplement to their Initial Notice of their Discovery Dispute ("Joint Supplement"). (Doc. 49).

**I.   Background**

This is a slip and fall case. Plaintiff and Defendant do not agree on the scope of topics that Plaintiff would like to explore during noticed Rule 30(b)(6) depositions and sought assistance from the Court to resolve the discovery dispute. (Doc. 45 at 1). Upon review of the Joint Statement, the Court made several findings and asked the parties to submit a joint supplement. (Doc. 48). The Court will address each finding as well as the parties' arguments in turn.

As an initial matter, the Court notes that Defendant requests more time to "fully brief the issues" as "Plaintiff's counsel presented ten pages of argument in response to Defendant's objections for the first time in this Supplement at 1:00 pm on the date this

Supplement was due to the Court." (Doc. 49 at 1). The Court will deny Defendant's request. The Court sought specific information from each party as to particular topics; the Order did not require Defendant to wait for Plaintiff so that Defendant could brief their statements. (*See* Doc. 48 at 1 ("Plaintiff will supplement its response by describing. . ." and "Defendant shall supplement its response by explaining. . ."). The Court gave both parties equal opportunity to supplement their joint statement following the findings that it made. (*See id.* at 2). Therefore, the Court will not allow Defendant more time to brief the issues.

**II.     Topics 1, 2, 4, and 7**

Plaintiff seeks to explore the topics she outlined in her joint statement as Topics 1, 2, 4, and 7. (Doc. 48 at 1). These topics are:

> (1) The person(s) most knowledgeable about the supervision, maintenance, and cleaning schedule of the exterior grounds specifically the area of the gasoline pumps and parking stalls with respect to maintaining cleaning same;
>
> (2) The person(s) most knowledgeable about policies and procedures regarding safety, maintenance of the exterior grounds, maintaining clean areas specifically ensuring that no slippery material remains in the area of the gasoline pumps and/or parking stalls;
>
> (4) The person(s) most knowledgeable about any considerations or decisions made regarding adequate warnings to alert customers of slippery grounds;
>
> (7) The person(s) most knowledgeable about the training providing to employees regarding the maintenance of the premises including maintaining clean gasoline pump areas and/or parking stalls free from slippery material(s).

(Doc. 45-1 (Ex. 1) at 1–2). Defendant objected that these topics were irrelevant and overbroad. (*See* Doc. 45 at 2). The Court asked Plaintiff to supplement its response by describing, with particularity, the relevance of this information as to other, uninvolved QuikTrip stores. (Doc. 48 at 1).

Here, Plaintiff argues that this information as to other, uninvolved QuikTrip stores is relevant because QuikTrip has policies and procedures which run across all of their self-owned gas stations and franchised gas stations which must be followed, therefore, the

organization has knowledge of similar slip and falls. (Doc. 49 at 4). Plaintiff explains that, to prevail on her state law claim of negligence, she must prove that Defendant had notice of the dangerous condition by showing: "(1) that the Defendant or its agents caused the dangerous condition; or (2) that the Defendant had actual knowledge of the existence of the dangerous condition; or (3) the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action to remedy it (i.e., constructive notice)." (Doc. 49 at 2) (citing *Haynes v. Syntek Fin. Corp.*, 909 P.2d 399 (Ariz. Ct. App. 1995); *Preuss v. Sambo's of Arizona, Inc.*, 635 P.2d 1210, 1211 (1981); *Walker v. Montgomery Ward & Co.*, 258, 511 P.2d 699, 702 (1973).

In the alternative, Plaintiff also argues that the "mode-of-operation" rule relieves her from proving that a business had notice of a hazard if: "(1) the store adopted a method of operation which the store could reasonably have anticipated would regularly produce dangerous conditions; and (2) the store failed to exercise due care to prevent harm under these circumstances." (Doc. 49 at 2–3 (citing Jefferson L. Lankford & Douglas A. Blaze, THE LAW OF NEGLIGENCE IN ARIZONA § 9.9 (1992); *Chiara v. Fry's Food Stores, Inc.*, 152 Ariz. 398, 400, 733 P.2d 283, 285 (1987)).

Defendant argues that these topics are irrelevant and that the "only arguably relevant discovery related to Plaintiff's fall is the cleaning, maintenance, and/or warnings that was actually performed at the subject store on the date/time of Plaintiff's fall." (Doc. 49 at 6). Defendant also argues that "the Arizona Court of Appeals ha[s] clarified that any evidence of QuikTrip's knowledge that leaks sometimes occur in parking spaces was not sufficient to trigger the mode-of-operation rule, and neither was evidence of how frequently leaks occur or how many customers visited the store." (Doc. 49 at 5 (citing *Rucker v. QuikTrip*, 2022 WL 2439767 (Ariz. Ct. App. July 5, 2022)).

Given what Plaintiff must prove at trial, the Court finds that under Rule 26(b), topics 1, 2, 4, and 7 are all relevant as they pertain to other QuickTrip stores.

> Rule 26(b)(1) of the Federal Rule of Civil Procedure ("FRCP") states that parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case,

- 3 -

considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Furthermore, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." *Id.*

"The Federal Rules of Civil Procedure strongly favor full discovery whenever possible." *Farnsworth v. Procter & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985). Whether discoverable evidence is relevant is a low bar. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (defining relevance in the context of discovery to include "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case"). For this reason, the Court should "interpret 'relevant' very broadly to mean matter that is relevant to anything that is or may become an issue in the litigation." *Id.* at 351 n. 12. Here, the Court finds that these topics— 1, 2, 4, and 7— are relevant, as they "could lead" to evidence that Plaintiff may rely on to prove her state law claim of negligence—the main issue of the case. *See Oppenheimer Fund, Inc*, 437 U.S. at 351.

The Court also finds that these topics are not overbroad. The party resisting discovery 'must show specifically how . . . each interrogatory is not relevant or how each question is overly broad, burdensome or oppressive.'" *Olmos v. Ryan*, 2020 WL 1904631, at *13 (D. Ariz. Apr. 17, 2020) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)). Defendant's assertions fall short. Thus, Plaintiff will be allowed to explore these topics through a Rule 30 deposition.

### III. Topics 5 and 6

Defendant asserts that the "work product doctrine" shields information related to topics 5 and 6. These topics sought by Plaintiff are: "(5) The person(s) most knowledgeable about the policies and procedures relating to the incident or injury investigation following the slip and fall of Plaintiff;" and "(6) The person(s) most knowledgeable about any investigation that may have been done following the slip and fall of Plaintiff, and any

determinations made regarding the parking stalls that were cleaned up." (Doc. 49 at 6). In addition to asserting privilege, Defendant also argues that Plaintiff has not articulated a substantial need to support her request for this information. (*Id.*) Defendant cited to Florida and Texas law in the Joint Statement to support their contentions that this information was privileged. (Doc. 45 at 3). The Court directed Defendant to supplement its response by explaining "(1) whether an applicable state law applies to such information, and (2) if so, why the parties' Protective Order does not cover such information." (Doc. 48 at 1).

In the Joint Supplement (Doc. 49), Defendant concedes that Plaintiff may explore these topics with the 30(b)(6) witness but states that it does not waive the protections of 26(b)(3).[1] Defendant seems to recognize that Plaintiff is seeking some non-privileged information through these topics. (Doc. 49 at 8). Thus, Plaintiff may explore them and if necessary, Defendant may assert the privilege it believes may apply to protected information.[2]

**IV.    Topic 8**

In Topic 8, Plaintiff would like to depose "The person(s) most knowledgeable about any considerations or decisions made regarding retaining and/or preserving video footage when Defendant contends that the subject area was cleaned prior to the available footage it retained." (Doc. 49 at 8). The Court found that "topic 8 is relevant only as to the retention policy and whether the Defendant complied with it and thus it shall be limited accordingly." (Doc. 48 at 2). Plaintiff seeks clarification from the Court on this topic, but would also like the information regarding:

---

[1] "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A).

[2] The Court also asked Defendant to explain (1) whether the applicable state law it cited applies to topics five and six, and (2) if so, why the parties' Protective Order does not cover such information. (Doc. 38 at 1). Defendant did not address either of these and instead concedes that Plaintiff may explore topics five and six. (Doc. 49 at 8).

> (1) what is the retention policy based upon – i.e., knowledge that vehicles leak oil, the general number of oil dropping, that it happens regularly, knowledge that oil creates a slippery surface, whether QuikTrip knows that oil may create a dangerous condition for customers; (2) when the retention policy was created, were all these issues considered; (3) when the retention policy was created was the frequency of how many oil droppings occur from vehicles considered in determining how often to clean the gasoline bay areas; (4) when the retention policy was created what considerations were taken into account with respect to retaining the video footage of when the gasoline bay areas are cleaned to support the common defense of QuikTrip that it cleans the gasoline bay areas; (5) when the retention policy was created did QuikTrip consider that retaining the video footage for a 24 hour period could be harmful to its defense position of allegedly cleaning the gasoline bay areas because the video could be used to show that it may not have cleaned the gasoline bay areas.

(Doc. 49 at 9). Plaintiff states that she believes that these issues are appropriate for her to explore during depositions. (*Id.*)

Defendant asserts that this request is "significantly broader" than Plaintiff's original request and is also irrelevant. (Doc. 49 at 9–10). Defendant also argues that:

> Plaintiff's counsel made a similar argument against QuikTrip in *Rucker v. QuikTrip*,[3] and the court made it clear in that case that QuikTrip's preservation of 30 minutes of video before Plaintiff's fall was sufficient and **did not constitute spoliation**, and additional video footage would have been irrelevant anyway because the alleged substance on which the plaintiff fell could not be seen on the video.

(*Id*. at 10 (citing *Rucker*, 2022 WL 2439767, at \*4) (emphasis added). In the current case, Plaintiff has not moved for sanctions alleging spoliation of evidence. Furthermore, Defendant has not moved for summary judgment yet as the parties are still in the discovery stage of litigation. At this juncture, the decision by the Arizona Court of Appeals affirming the trial court in *Rucker* has little bearing on the instant case. *See* 2022 WL 2439767, at \*4.

The Court finds that the information sought regarding the retention/preservation policy and whether the Defendant complied with it are ripe for exploration. Furthermore,

---
[3] 2022 WL 2439767, \*4.

- 6 -

the additional five topics that Plaintiff seeks clarification on also fall within Rule 26(b)(1) as discoverable evidence. Through these specific questions Plaintiff has narrowed topic eight, not broadened it, as Defendant contends. (*See* Doc. 49 at 9). This information is relevant to Plaintiff's state law claim of negligence, or it "could lead" to evidence that Plaintiff may rely on to prove her state law claim. *See Oppenheimer Fund, Inc*, 437 U.S. at 351. Thus, topic eight is discoverable under Rule 26(b)(1).

Furthermore, the Court has yet to make a finding regarding "the mode-of-operation" rule and whether Plaintiff can use it to bypass the notice requirement to prevail on a claim of negligence. *See Rucker*, 2022 WL 2439767, at *1 ("[Plaintiff] must prove QuikTrip had notice of and did not reasonably respond to a dangerous condition" to establish negligence) (internal citations omitted). This rule would relieve Plaintiff from proving that Defendant had notice of a hazard if: "(1) the store adopted a method of operation which the store could reasonably have anticipated would regularly produce dangerous conditions; and (2) the store failed to exercise due care to prevent harm under these circumstances." *Rucker*, 2022 WL 2439767, at *3. Because the Plaintiff may be able to use the "mode-of-operation" rule in this case, the Court finds that the information Plaintiff seeks under topic eight is relevant to their claim of negligence and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

**V.     Topic 9**

Finally, Plaintiff would like to depose "the person(s) most knowledgeable about the visitors that Defendant provides goods and services, including providing gasoline via its fuel pump areas." (Doc. 49 at 10). The Court ruled that it "views topic 9 as overbroad as stated and will require Plaintiff to supplement by describing the relevance of that topic." (Doc. 48).

Plaintiff states that she "is not looking for an exact number of visitors that visit QuikTrip but seeks a general number of visitors that frequent the gas pump areas." (Doc. 49 at 11). Plaintiff says that Mr. Kevin Bergman, one of Defendant's corporate designees, previously testified in another matter that "a million transactions over the last couple of

- 7 -

years have occurred at a particular store, and that it recognizes and expects a lot of leaks from cars." (*Id.* at 11 (citing Ex. 1)). Plaintiff says Defendant "asserts that we cannot use the Rule 30(b)(6) testimony in this case" so accordingly seeks "to depose the QuikTrip representative in this case regarding the same issue the company testified about in the past, which is binding on the company per Rule 30(b)(6) and the cases interpreting the rule." (*Id.*) Plaintiff argues that "[h]aving knowledge of the significance of the number of visitors that frequent QuikTrip goes to the heart of Plaintiffs position to address the element that the condition occurs with regularity and was therefore foreseeable by QuikTrip." (Doc. 49 at 11). Plaintiff also argues that "with respect to the mode of operation rule, this information is material to how the store adopted a method of operation which the store could reasonably have anticipated would regularly produce dangerous conditions." (*Id.*) Plaintiff states that she intends on limiting this topic to "the 'amount of visitors that Defendant provides gasoline via its fuel pump areas' which is relevant to the issues in the case." (*Id.*) Defendant argues that "the number of visitors to a store has no bearing on whether Plaintiff slipped and fell on an unreasonably dangerous condition at the subject store" and that the state court in *Rucker* also found this information was irrelevant. (*Id.*) Defendant does not explain why the state court found this information irrelevant, or why this Court should also find the same way.

This information, in conjunction with the information sought in topic eight, could help Plaintiff satisfy the "mode-of-operation-rule." *Rucker*, 2022 WL 2439767, at *3. Furthermore, Plaintiff may be able to use this information to prove its state law claim of negligence. *See Oppenheimer Fund, Inc*, 437 U.S. at 351. However, though Plaintiff has, on her own, narrowed this topic from all customers to just customers who use the fuel pumps, the request is still overbroad. Thus, the Court finds that Plaintiff should further narrow the scope of its discovery request, for example, by date sampling, to not impose an undue burden on Defendant.

/ / /

/ / /

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff may explore topics 1, 2, 4, 5, 6, 7, 8 and 9 as stated herein.

Dated this 6th day of October, 2023.

Honorable Diane J. Humetewa
United States District Judge