**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martha Torres, | No. CV-22-00841-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| QuikTrip Corporation, et al., | |
| Defendants. | |

Pending before the Court are Defendant QuikTrip Corporation's ("Defendant")[1] Motion for Summary Judgment, (Doc. 65), and Plaintiff Martha Torres' ("Plaintiff") Motion for Spoliation Sanctions, (Doc. 66). Both motions are fully briefed. (Docs. 68, 69, 70, 71). The Court now rules on the motions.

**I.   BACKGROUND**

On December 6, 2019, Plaintiff stopped at a QuikTrip around 1:00 AM. (Doc. 65 at 2; Doc. 70 at 15). According to Plaintiff, while in the gasoline bay area, Plaintiff slipped on a liquid substance and fell. (Doc. 65 at 2; Doc. 70 at 15). Plaintiff did not notice any wet

---

[1] In addition to QuikTrip, Plaintiff names numerous fictitious defendants. (Doc. 1-3 at 2 (naming John Does and Jane Does I-X, ABC Corporations I-X, and XYZ Partnerships I-X)). "Generally, the Federal Rules of Civil Procedure do not permit the use of Doe defendants." *Ivan v. Wells Fargo Bank, N.A.*, CV 12-1065-PHX-JAT, 2012 WL 3095050, at *2 (D. Ariz. July 30, 2012) (citing Fed. R. Civ. P. 10(a)); *see also Craig v. U.S.*, 413 F.2d 854, 856 (9th Cir. 1969); *Indian Hills Holdings, LLC v. Frye*, No. 3:20-cv-00461-BEN-AHG, 2021 WL 1139419, at *9 (S.D. Cal. Mar. 25, 2021). Plaintiff has not offered a persuasive reason to depart from Rule 10. The Court will therefore utilize the singular shorthand of "Defendant" to refer to QuikTrip throughout this Order, reflecting its status as the only properly pleaded defendant in this matter. Further, the fictitious defendants will be dismissed below.

spots on the ground prior to her fall but believes that "the substance she slipped and fell on was oil." (Doc. 65-1 at 47; Doc. 70 at 8).

After falling, Plaintiff took photos of the liquid, left the QuikTrip, and went home. (Doc. 65-1 at 53, 56, 61). However, Plaintiff returned to the QuikTrip around 4:00 PM and made a report. (Doc. 65-1 at 60-61). Plaintiff testified that when she returned, she saw sand on the spot where she fell. (Doc. 65-1 at 60).

Defendant preserved 30 minutes of surveillance video footage after receiving Plaintiff's report. (Doc. 65-1 at 1 (received by the Clerk's office on February 28, 2025)). According to Derrick Osmond, a QuikTrip corporate representative and Rule 30(b)(6) designee, it is Defendant's general "practice" to "preserve 15 minutes [of video] before and . . . after [an incident]." (Doc. 68-1 at 3). Depending on the store, video footage remains on Defendant's servers for 30 to 45 days. (Doc. 68-1 at 4). After that, the video records over itself, or "overwrites itself." (Doc. 68-1 at 5). Plaintiff watched the surveillance footage at her deposition and conceded that the video does not show any liquids on the ground, but perhaps shows a "dark spot." (Doc. 65-1 at 47-48). Plaintiff was injured by the fall and she incurred medical care and treatment expenses as a result.[2]

Steven Sparacia, a QuikTrip personnel manager and Rule 30(b)(6) designee, described some of QuikTrip's other relevant policies. Mr. Sparacia explained that QuikTrip's "normal practice" was for an employee to take a shift walk within the first 45 minutes of their shift. (Doc. 65-1 at 182-84). As pertinent here, an employee should have taken a shift walk between 10:00 PM and 10:45 PM on December 5, 2019. (Doc. 65-1 at 182-84). Part of the shift walk includes looking for safety hazards around the gasoline bay areas. (Doc. 65-1 at 185). Employees also sometimes utilize a "daily assignment worksheet" ("DAW") to indicate when they complete certain tasks. (Doc. 65-1 at 176). Per the DAW here, an employee power-washed the gasoline bay area after the shift walk (after 10:45 PM) but prior to the end of the shift (before 7:00 AM). (Doc. 65-1 at 194, 196).

---

[2] The following is a non-exhaustive list of interactions between Plaintiff and medical providers: Plaintiff went to urgent care, (Doc. 65-1 at 64-65, 69, 74-75, 239-253); the emergency room, (Doc. 65-1 at 75, 255-264); a chiropractor, (Doc. 65-1 at 77-78); the Personal Injury Clinic (Doc. 65-1 at 79-80, 255); and a physical therapist (Doc. 65-1 at 84).

1  However, the checkbox next to "Shiftwalk Night" was left unchecked. (Doc. 65-1 at 177).

## II. LEGAL STANDARDS

### a. Summary Judgment

In a diversity case, a federal court applies state substantive law, but federal procedural law. *See generally Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). The federal summary judgment standard is procedural, therefore it controls in a diversity case in federal court. *Gasaway v. Nw. Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994) ("In diversity cases, procedural issues related to summary judgment are controlled by federal law.").

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1)(A-B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus.*

1  *Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A
2  dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return
3  a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. The non-movant's bare
4  assertions, standing alone, are insufficient to create a material issue of fact and defeat a
5  motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context,
6  the Court construes all disputed facts in the light most favorable to the non-moving party.
7  *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

8  At the summary judgment stage, the Court's role is to determine whether there is a
9  genuine issue available for trial. There is no issue for trial unless there is sufficient evidence
10 in favor of the non-moving party for a jury to return a verdict for the non-moving party.
11 *Anderson*, 477 U.S. at 249-50. "If the evidence is merely colorable, or is not significantly
12 probative, summary judgment may be granted." *Id.* (citations omitted).

### b. Negligence and Premises Liability

Because this is a diversity case, the Court must apply Arizona substantive law. *See Beesley v. Union Pac. R.R. Co.*, 430 F. Supp. 2d 968, 970 (D. Ariz. 2006) (citing *Erie R.R. Co.*, 304 U.S. at 78-79). Generally, to establish a claim for negligence under Arizona law, a plaintiff must prove four elements: (1) a duty requiring the defendant to conform to a certain standard of care; (2) a breach by the defendant of that standard; (3) a causal connection between the defendant's conduct and the resulting injury; and (4) actual damages." *Gipson v. Kasey*, 150 P.3d 228, 230 (Ariz. 2007). "To establish negligence in a premises liability case under Arizona law, 'the plaintiff must prove either, 1) that the foreign substance or dangerous condition is the result of defendant's acts or the acts of his servants, or 2) that defendant had actual knowledge or notice of the existence of the foreign substance or dangerous condition, or 3) that the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action to remedy it (i.e., constructive notice).'" *Sheikh v. Costco Wholesale Corp.*, No. CV-22-00947-PHX-DLR, 2024 WL 1175761, at *2 (D. Ariz. Mar. 19, 2024) (quoting *Walker v. Montgomery Ward & Co., Inc.*, 511 P.2d 699, 702 (Ariz. Ct. App. 1973)). Here, the Court

will focus its inquiry on the issue of breach, which hinges on notice.³

### i. Mode-of-Operation Rule

In addition to the traditional actual and constructive notice requirements stated above, Arizona courts allow slip-and-fall plaintiffs to prove notice using the "mode-of-operation" rule. *See Chiara v. Fry's Food Stores of Arizona, Inc.*, 733 P.2d 283, 285 (Ariz. 1987). The mode-of-operation rule allows plaintiffs, in certain circumstances, to bypass the traditional notice requirements by "look[ing] to a business's choice of a particular mode of operation and not events surrounding the plaintiff's accident." *Id.* The mode-of-operation rule "relieves the plaintiff of the initial burden of proving notice in cases where the occurrence of a transitory hazardous condition can reasonably be anticipated from the store owner's method of doing business." *Bloom v. Fry's Food Stores, Inc.*, 636 P.2d 1229, 1231 (Ariz. Ct. App. 1981). "The mode-of-operation rule is of limited application because nearly every business enterprise produces some risk of customer interference." *Chiara*, 733 P.2d at 285-86. The mode-of-operation rule therefore only applies "when a business can reasonably anticipate that hazardous conditions will regularly arise." *Id.* at 286.⁴

### ii. Reasonable Care

If a slip-and-fall plaintiff succeeds in proving notice—either by establishing traditional actual or constructive notice, or via the mode-of-operation rule—the Court's inquiry moves to reasonable care under the circumstances. *See id.* Arizona law dictates that in a slip-and-fall case, the plaintiff "bears the burden of persuading the jury that the defendant acted unreasonably," and "[t]he plaintiff must . . . come forward with evidence supporting [her] case." *Id.*

### III. ANALYSIS

#### a. Actual or Constructive Notice

Defendant argues that Plaintiff "cannot[] establish that QuikTrip had constructive

---

³ The parties focus their arguments on the element of notice, or lack thereof. (*See, e.g.,* Doc. 65 at 5-12; Doc. 70 at 2-15, 18).

⁴ In the context of the mode-of-operation rule, Arizona courts define "regularly" as "customary, usual, or normal." *Contreras v. Walgreens Drug Store*, 149 P.3d 761, 763 (Ariz. Ct. App. 2006).

- 5 -

notice of the alleged spot on which she slipped" because "Plaintiff has not presented any evidence of how long the condition existed before Plaintiff's fall."[5] (Doc. 65 at 5-6). Constructive notice is when "the condition existed for such a length of time that in the exercise of ordinary care the proprietor should have known of it and taken action to remedy it." *Walker*, 511 P.2d at 702. "To prevail on [a] constructive notice theory at trial, Plaintiff would have to establish two facts: 1) the amount of time the [liquid] was on the [ground]; and 2) that amount of time was not reasonable given the circumstances." *Velasco v. Bodega Latina Corp.*, No. CV-18-02340-PHX-ROS, 2019 WL 1787483, at *4 (D. Ariz. Apr. 24, 2019).

Here, at trial, Plaintiff would have the burden to show how long the liquid substance had been on the ground. However, as Plaintiff explains in her Motion for Spoliation Sanctions, Plaintiff faces an insurmountable burden in showing constructive notice because Defendant preserved only 15 minutes of surveillance video footage prior to Plaintiff's fall. (Doc. 66 at 6). The Court thus addresses the spoliation argument first.

### i. Spoliation Legal Standard[6]

"Spoliation is the destruction or material alteration of evidence, or the failure to otherwise preserve evidence, for another's use in litigation." *Fast v. GoDaddy.com LLC*, 340 F.R.D. 326, 334 (D. Ariz. 2022) (quoting *Surowiec v. Cap. Title Agency, Inc.*, 790 F. Supp. 2d 997, 1005 (D. Ariz. 2011)). Previously, there were two independent sources of power that authorized sanctions against "a party who has despoiled evidence: the inherent power of federal courts to levy sanctions in response to abusive litigation practices," and Federal Rule of Civil Procedure 37. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006); Fed. R. Civ. P. 37(b), (e). However, after the 2015 amendments to Rule 37, Rule 37 now "provides the exclusive source of sanctions for the loss of [electronically stored information ("ESI")] and *forecloses reliance on inherent authority*." *Fast*, 340 F.R.D. at

---

[5] Plaintiff does not argue Defendant had actual notice. (Doc. 70 at 18).
[6] Plaintiff's Motion for Spoliation Sanctions relies on cases decided under state law. (*See* Doc. 66 at 8-9). However, a federal court sitting in diversity applies federal law when addressing spoliation. *See generally Mannion v. Ameri-Can Freight Sys. Inc.*, No. CV-17-03262-PHX-DWL, 2020 WL 417492 (D. Ariz. Jan. 27, 2020); *Glover v. BIC Corp.*, 6 F.3d 1318 (9th Cir. 1993). Thus, the Court will use the legal standard as stated here.

335 (emphasis added); *see also Newberry v. County of San Bernardino*, 750 Fed. App'x 534, 537 (9th Cir. 2018) (citing Fed. R. Civ. P. 37(e) advisory committee's note to the 2015 amendment) (cleaned up); Steven S. Gensler & Lumen N. Mulligan, 1 Federal Rules of Civil Procedure, Rules and Commentary, Rule 37 (2022).

Although Plaintiff asks this Court to rely on its inherent authority in deciding the Motion for Spoliation Sanctions, (Doc. 66 at 11), as explained above, the Court lacks the ability to do so. The evidence at issue—the video surveillance footage—is ESI and the Court must use the standards articulated in Rule 37(e). Neither party briefed the spoliation issue using Rule 37(e).[7] Nonetheless, because Rule 37(e) is the standard, the Court undertakes the analysis here.

### ii. Rule 37(e)

Under Rule 37(e), if ESI that "should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery," a court:

> (1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
> (2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
> (A) presume that the lost information was unfavorable to the party;
> (B) instruct the jury that it may or must presume the information was unfavorable to the party; or
> (C) dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). "This rule establishes three prerequisites to sanctions: the ESI should have been preserved in the anticipation or conduct of litigation, it is lost through a failure to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery." *Fast*, 340 F.R.D. at 335.

Here, it is undisputed that any additional video footage has been overwritten and

---

[7] Because Rule 37(e) is the standard, the Court finds wholly unpersuasive either party's state law arguments. Similarly, although Defendant heavily relies on *Rucker v. QuikTrip Corp.*, No. 1 CA-CV 21-0550, 2022 WL 2439767, at *3 (Ariz. Ct. App. July 5, 2022), and there are some factual similarities between this case and *Rucker*, *Rucker* did not contemplate a spoliation instruction under federal law. Accordingly, the Court finds *Rucker* inapposite on the issue of whether there was constructive notice because it considered the spoliation issue under state law.

cannot be replaced. (Doc. 68 at 2; Doc. 68-1 at 4-5). Thus, the question is whether additional video should have been preserved and, if so, whether Defendant took reasonable steps to do so. Defendant clearly recognized that it had a duty to preserve some amount of evidence in the anticipation of litigation; otherwise, Defendant would not have preserved any video. According to Mr. Osmond, QuikTrip's Rule 30(b)(6) designee, "it is [QuikTrip's] practice that whenever [an] incident is reported that [QuikTrip] preserve[s] 15 minutes [of video] before and 15 minutes after for a total of 30 minutes."[8] (Doc. 68-1 at 3). However, Defendant concedes that "[i]t's a case-by-case basis" and that the "adjuster" has the ability to capture additional video, and sometimes does.[9] (Doc. 68-1 at 8).

On the day of Plaintiff's report, Defendant had the opportunity to preserve at least 24 hours of video prior to the incident. (Doc. 68 at 2; Doc. 68-1 at 6, 8). Defendant decided to follow its policy, without adjustment, and preserve 15 minutes of video before and after the incident, for a total of 30 minutes of video. (*See generally* Doc. 65-1 at 1 (received by the Clerk's office on February 28, 2025)). The issue is whether Defendant should have exercised the discretion it concededly uses in other cases to preserve additional video footage in the anticipation of litigation. For the following reasons, the Court finds Defendant should have preserved additional video footage in this case.

Defendant hinges its rebuttal on the idea that because "the substance that Plaintiff alleges she slipped on is not visible" in the video that "any additional video would not be probative of . . . whether QuikTrip had notice." (Doc. 68 at 3; *see also* Doc. 65 at 7

---

[8] The Court notes that, if strictly followed, Defendant's policy of preserving only 15 minutes of video prior to an incident would, in most cases, deprive plaintiffs of the opportunity to prove constructive notice in a state law negligence claim against Defendant. However, the Court understands that in some scenarios, preserving less than 15 minutes may be sufficient. *See, e.g., Libretti v. QuikTrip Corp.*, No. 1 CA-CV 23-0762, 2024 WL 4459044 (Ariz. Ct. App. Oct. 10, 2024) (video captured spill that occurred less than a minute before a fall). Although plaintiffs may attempt to bypass traditional notice requirements via the mode-of-operation rule, in more recent years, courts have consistently declined to apply that rule, and Defendant itself argues it does not apply. *See Frankel v. Aramark Servs. Inc.*, No. CV-16-03101-PHX-JAT, 2018 WL 3429426, at *4 (D. Ariz. July 16, 2018) (collecting cases). The Court addresses the mode-of-operation rule below.
[9] *See, e.g., Rucker*, 2022 WL 2439767, at *4 (QuikTrip preserved one hour of surveillance video).

- 8 -

1  (additional video footage would have been "insufficient to determine how long the alleged
2  spill existed before Plaintiff's fall.")). The Court is not persuaded by this argument.

3        First, it is undisputed that Plaintiff slipped on a liquid substance and fell, and
4  Plaintiff's pictures clearly show there was some liquid on the ground. (Doc. 70-4 at 1-3).
5  Thus, it is irrelevant that the video itself does not show the liquid because there was clearly
6  liquid present. Furthermore, there are numerous occurrences that, if depicted in additional
7  video footage, would be highly probative of notice.[10] The Court therefore finds that
8  Defendant's argument that summary judgment is proper because Plaintiff did not show
9  notice squarely contradicts Defendant's argument that it was under no obligation to
10 preserve more than 15 minutes of surveillance footage prior to the fall—the most direct
11 evidence of notice in this case. At the very least, Defendant could have preserved footage
12 starting from the shift change at 10:00 PM, which is when the new employee should have
13 performed a shift walk. This would have required preserving only an additional three hours
14 of video.[11]

15       The Court is also unpersuaded by Defendant's argument that "it is very possible that
16 the substance on which Plaintiff slipped was water from [a] window washing squeegee"
17 from another patron 11 minutes before Plaintiff's fall. (Doc. 68 at 8-9). Plaintiff testified
18 multiple times that she believes she slipped on oil. (Doc. 70 at 8). Thus, any argument
19 regarding whether the liquid was oil or water suggests a dispute of material fact and directly
20 undermines Defendant's own Motion for Summary Judgment, which asserts there are no
21 material fact disputes.

22       Finally, Defendant cites *McGuire v. Valley Nat. Bank of Phoenix*, 381 P.2d 588

---

[10] Plaintiff suggests that additional video footage might have shown (1) "that no one inspected the area;" (2) "that [Defendant] let the dangerous condition exist for hours;" and (3) "that [Defendant] did not clean the area." (Doc. 69 at 3). The Court adds that additional video footage also might have shown the employee performing the shift walk, an employee otherwise examining the area at issue, an employee cleaning the area at issue, an employee power washing the area at issue, the spill occurring, the spot illuminated in different lighting, or another patron walking around the area at issue. Even if the video footage showed QuikTrip did *not* have constructive notice, it is still highly relevant to the case.

[11] Defendant cites server space as a reason for not preserving 24 hours of footage. (Doc. 68-1 at 7). However, Defendant's servers are already storing 30-45 *days* of footage. The Court fails to see why an additional three hours of video represents a burden to Defendant.

- 9 -

(Ariz. 1963) for the premise that a jury cannot be left to speculate as to the timing of a hazardous condition. (Doc. 65 at 7). The Court also finds this contradictory. Even though the spot is not visible in the video, the Court has already explained how additional footage would *decrease* the amount of speculation regarding notice in this case. This is especially true considering that no employee indicated that they performed the shift walk on the DAW and the only evidence of whether the shift walk was performed would therefore be the video footage. (*See* Doc. 65-1 at 177).

The Court finds by a preponderance of the evidence that the basic prerequisites to sanctions under Rule 37(e) are satisfied. Defendant had a duty to preserve more than 30 minutes of surveillance video footage, Defendant did not take reasonable steps to do so, and the footage cannot be restored or replaced through additional discovery. *See* Fed. R. Civ. P. 37(e). "With the prerequisites satisfied, the Court must now determine whether the additional requirements for sanctions under Rule 37(e)(1) and (e)(2) are satisfied." *Fast*, 340 F.R.D. at 339.

### iii. Rule 37(e)(1) and (e)(2)

Plaintiff seeks the specific sanction of an adverse inference jury instruction against Defendant. (Doc. 66 at 1). An adverse inference jury instruction is only available under Rule 37(e)(2), so the Court will analyze Plaintiff's Motion under that section.

To give an adverse inference jury instruction, the Court must first find that Defendant "acted with the intent to deprive" Plaintiff of the use of the video surveillance footage in litigation. Fed. R. Civ. P. 37(e)(2). "Although direct evidence of such intent is always preferred, a court can find such intent from circumstantial evidence." *Fast*, 340 F.R.D. at 339. The Court may make this finding "when ruling on a pretrial motion, when presiding at a bench trial, or when deciding whether to give an adverse inference instruction at trial." Fed. R. Civ. P. 37(e) advisory committee's note to the 2015 amendment.

The Court may also "conclude that the intent finding should be made by a jury." *Id.; see also Hoffer v. Tellone*, 128 F.4th 433, 440-41 (2d Cir. 2025). If the Court concludes as such,

>the court's instruction should make clear that the jury may infer from the loss of the information that it was unfavorable to the party that lost it only if the jury first finds that the party acted with the intent to deprive another party of the information's use in the litigation. If the jury does not make this finding, it may not infer from the loss that the information was unfavorable to the party that lost it.

*Id.*

Here, the Court concludes that the intent finding should be made by a jury. If the jury concludes that Defendant acted with the intent to deprive Plaintiff of the use of the video surveillance footage in litigation, the jury will be allowed to consider an adverse inference instruction from which the jury may infer that the additional video footage was unfavorable to Defendant. This is enough to create a disputed issue of fact on the issue of constructive notice. *See Jones v. Riot Hosp. Grp. LLC*, 95 F.4th 730, 735 (9th Cir. 2024) (noting that "[r]elevant considerations include the timing of destruction, affirmative steps taken to delete evidence, and selective preservation.").

### b. Mode-of-Operation Rule

Alternatively, Plaintiff argues that if the Court denies her request for an adverse inference and concludes Plaintiff has not created an issue of fact on constructive notice, Plaintiff could still create a jury question via the mode-of-operation rule, which allows Plaintiff to "bypass" traditional notice requirements. However, because the Court has concluded the jury may consider an adverse inference instruction, and that such an instruction is sufficient to create a question of fact, the Court need not decide this issue to deny summary judgment. Nonetheless, the Court must decide before trial whether a jury instruction on the mode-of-operation rule as an alternative means of establishing notice will be given. Therefore, the Court will determine whether Defendant is entitled to partial summary judgment on the issue of whether the rule applies.

Defendant argues that the mode-of-operation rule does not apply because "it is unknown if the substance was actually oil . . . [and] any evidence regarding the regularity of oil spills may not even be relevant," and, alternatively, because "Plaintiff has not established that oil spills 'regularly occur' in the gas bays, nor has she established that [Defendant] failed to exercise reasonable care." (Doc. 65 at 9-10).

Recently, an Arizona state court declined to apply the mode-of-operation rule to a QuikTrip, despite evidence "showing that QuikTrip knew customer vehicles sometimes leak in parking spaces and that, given the large number of customers who visit the store each day, leaks can frequently occur." *Rucker*, 2022 WL 2439767, at *3. The court found that "the frequency of oil leaks, standing alone, does not trigger the mode-of-operation rule." *Id.* (citing *Contreras v. Walgreens Drug Store No. 3837*, 149 P.3d 761 (Ariz. Ct. App. 2006)). The court also noted that the plaintiff had not offered evidence "to show QuikTrip failed to take steps to mitigate any such risk," such as evidence that "QuikTrip deviated from its typical procedures for handling oil spills—or that those procedures were deficient or deviated from a more rigorous industry standard of care followed by other gas station operators." *Id.*

Here, too, there is evidence that QuikTrip knew that oil leaks occur; in fact, Plaintiff cites to a Rule 30(b)(6) deposition from *Rucker* for this premise.[12] (Doc. 70 at 9-10). Plaintiff also cites to a Rule 30(b)(6) deposition from this case, in which Mr. Sparacia testified that QuikTrip employees retain some level of discretion in determining whether to clean up an oil spot. (Doc. 65-1 at 149-50, 165). However, like the plaintiff in *Rucker*, Plaintiff has not offered additional evidence that suggests that any employee in this case deviated from typical procedures,[13] or that QuikTrip's cleaning procedures, including the level of employee discretion, are deficient or otherwise deviate from procedures followed at other gas stations. In conclusion, the mode-of-operation rule does not apply and Defendant is entitled to partial summary judgment on this issue.

### c. Medical Causation and Damages

Defendant also argues that summary judgment is warranted because Plaintiff "failed

---

[12] Defendant does not object to this testimony being used in this case.
[13] Mr. Sparacia, Defendant's Rule 30(b)(6) designee, testified that the boxes for tasks on the DAW, including shift walk, were left unchecked. (Doc. 70-2 at 83). However, Mr. Sparacia says that the unchecked boxes do not "suggest that the shift walk was not done," but rather "suggest[] that somebody did not checkmark it off." (Doc. 70-2 at 83). As discussed above, the best evidence of whether the shift walk was performed is the video surveillance footage, which Defendant destroyed. Because the Court has concluded that the jury may consider an adverse inference instruction based on the destroyed video footage, the Court need not address it here.

to prove medical causation and damages." (Doc. 65 at 12). Specifically, Defendant argues Plaintiff failed to comply with the expert witness requirements in Federal Rule of Civil Procedure 26 in disclosing evidence of Plaintiff's medical treatments. (Doc. 65 at 12-18). Defendant effectively seeks to preclude all evidence from Plaintiff's treating physicians. (Doc. 65 at 17-18). However, because Plaintiff survives summary judgment without this evidence, the Court need not decide the disclosure issue to decide summary judgment.

A non-expert, or "lay," witness may testify "in the form of an opinion" if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Thus, while a lay witness may "testify about symptoms and injuries that are within the realm of the average lay person's experience, technical questions of medical causation should be reserved for expert testimony." *Mendoza v. Shinn*, No. CV-21-00645-PHX-SPL, 2024 WL 4452753, at *3 (D. Ariz. Oct. 9, 2024); *see also Johnson v. Costco Wholesale Corp.*, No. CV-17-02710-PHX-SMB, 2021 WL 461937, at *3 (D. Ariz. Feb. 9, 2021) (allowing plaintiff to testify that shattered bottle caused cut to eye but not that it caused a traumatic brain injury, migraines, a stroke, or nerve damage).

Here, Plaintiff may generally testify as to what an average person would have observed after she fell. For example, Plaintiff may testify—and already has in her deposition—to the following: (1) that "when [she] got up from falling on the concrete . . . [she] started feeling pain on [her] left side;" (2) that "when [she] got up, [she] had blurry vision;" (3) that she "remember[s] waking up on the ground" and believes she lost consciousness for "two to three minutes;" and, (4) that she had "pain in [her] left leg." (Doc. 70-3 at 37, 51-53, 56). The Court finds this to be enough to survive summary judgment on damages. However, this Order is without prejudice to Defendant moving *in limine* to preclude evidence from each provider separately.[14]

---

[14] If Defendant chooses to file any motions *in limine*, Defendant should prepare one motion per provider. Each motion should discuss what was disclosed, how, when, and whether a written report was required. If Defendant argues that a written report was required and that Plaintiff failed to include a report, Defendant should also discuss whether Plaintiff's failure

- 13 -

### IV. CONCLUSION

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 65), is **GRANTED in part** and **DENIED in part** as specified above.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Spoliation Sanctions (Doc. 66) is **GRANTED** to the extent specified above.

**IT IS FURTHER ORDERED** that fictitious defendants John Does and Jane Does I-X, ABC Corporations I-X, and XYZ Partnerships I-X are dismissed without prejudice.

**IT IS FINALLY ORDERED** that an Order setting trial will follow.

Dated this 25th day of March, 2025.

James A. Teilborg
Senior United States District Judge

---

to do so was "substantially justified or [] harmless" under Federal Rule of Civil Procedure 37(c)(1). *See Liberty Ins. Corp. v. Brodeur*, 41 F.4th 1185, 1191 (9th Cir. 2022).